# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MITCHELL C. BASALDUA | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-664 |
| | § | Judge Mazzant |
| AMERICAN FIDELITY ASSURANCE | § | |
| COMPANY | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #50-58) and Plaintiff's Motion for Summary Judgment (Dkt. #64). Having considered the motions, the responses, and the relevant pleadings, the Court finds Defendant's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

Plaintiff Mitchell C. Basaldua ("Plaintiff" or "Basaldua") commenced this action against Defendant, American Fidelity Assurance Company ("Defendant" or "American Fidelity"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B),[1] alleging that Defendant wrongfully terminated his disability benefits under an employee welfare benefit plan (the "Plan") insured by American Fidelity.

On March 3, 2014, Defendant filed its motion for summary judgment (Dkt. #50-#58). On April 10, 2014, Plaintiff filed his response (Dkt. #65). On April 22, 2014, Defendant filed its reply (Dkt. #67).

On April 10, 2014, Plaintiff filed his motion for summary judgment (Dkt. #64). On April 22, 2014, Defendant filed its response (Dkt. #66). On May 8, 2014, Plaintiff filed his reply (Dkt.

---

[1] ERISA § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

#70), and on May 14, 2014, Defendant filed its sur-reply (Dkt. #71). In addition, on May 1, 2014, Defendant filed its objections to the affidavit of Douglas S. Won, M.D. ("Dr. Won") (Dkt. #69). On August 7, 2014, Defendant requested leave and filed a supplemental brief regarding the pending summary judgment motions (Dkt. #74). Defendant's request for leave was granted (Dkt. #76).

Plaintiff was employed by Five Star Ford of Texas, which participates in an employee benefit plan sponsored by the Texas Automotive Dealers Association (Dkt. #51, Ex. A). The Plan is insured and its claims are administered by American Fidelity. The Plan includes a long-term Group Disability Benefits Policy (the "Policy"), which is identified as Policy #G-108-473. *Id*. at ¶ 4 and Ex. 1. The Policy is effective as of March 1, 2008. *Id*.

On July 8, 2008, Plaintiff submitted a claim form for disability benefits under the Plan as a result of an injury sustained in June 2008 (AR 125-127).[2] Plaintiff began receiving benefit checks under his short-term disability policy on July 16, 2008 (AR 348). On December 23, 2008, Plaintiff was notified that his short-term disability benefits were exhausted, and Plaintiff was notified that there were no long-term benefits payable as a result of a pre-existing condition. *Id*. at AF 359. However, upon review Plaintiff was advised that the previously imposed pre-existing decision on his long-term benefits was reversed, and Plaintiff was paid disability benefits back to the date his short-term benefits had exhausted (AR 361).

On October 21, 2009, American Fidelity sent a letter to Plaintiff's treating physician, Dr. Won, requesting documentation regarding Plaintiff's disability which corresponded to certain specific questions identified in the letter (AR 211-212). The correspondence stated:

> What dates has he been seen since 6/23/09? On 7/1/09 you had him as a Class 1 with no limitations, then changed it to unable to bend, stoop, lift, push, pull

---

[2] The administrative record is contained in full on the Court's electronic docket at entry numbers 52-58 and will be referred to in this opinion as "AR" followed by the relevant page number.

> anything over 10 lbs. On 7/24/09 received a note that advised most restrictions
> had been lifted. On the 10/9/09 claim for you have him as a Class 4, able to sit
> down with 20-30 minute "duration" followed by a break. What has happened that
> his condition has worsened? What is Dr. Won basing this on? Is he having more
> surgery? What is his treatment plan and prognosis?

(AR 211). On December 15, 2009, Plaintiff called American Fidelity to inquire about the status of his disability payments, and was advised that American Fidelity needed the answers to the questions submitted to Dr. Won (AR 633). On January 6, 2010, American Fidelity sent Plaintiff an explanation of benefits with no benefit payment, and advised Plaintiff that it still required clarification from Dr. Won regarding Plaintiff's disability status (AR 379). On January 21, 2010, Plaintiff again called American Fidelity to inquire about the status of his disability payments, and was again advised that American Fidelity needed further information from Dr. Won before additional benefits could be released (AR 637).

On February 5, 2010, Dr. Won sent seventeen pages of medical records to American Fidelity (AR 243-259). Dr. Won's notes from January 15, 2010, indicated that Plaintiff's status was post lumbar spine endoscopic decompression, and noted that Plaintiff presented with chronic low back pain (AR 247). Dr. Won stated that Plaintiff failed conservative care consisting of physical therapy, muscle relaxants, narcotic pain medications, anti-inflammatory medication, epidural steroid injections, chiropractic manipulation, traction, and brace therapy. *Id.* Dr. Won stated:

> I had a long talk with the patient today and went over options for treatment,
> disease education, and rehabilitation counseling. At this time, we would
> recommend MRI with and without contrast for future evaluation of this pain. The
> patient states that he cannot afford this study. The patient will be referred to
> chronic pain management program. He agrees.

*Id.* Plaintiff was instructed to follow up with his primary care provider regarding all positive review of systems, and follow up with Dr. Won on an as-needed basis in the future (AR 248).

On February 11, 2010, American Fidelity again sent Plaintiff an explanation of benefits without payment, indicating that the documents received from Dr. Won were being reviewed by management (AR 380).

On February 16, 2010, American Fidelity again sent a letter to Dr. Won requesting the answers to the same questions previously directed to him (AR 44). On March 4, 2010, Plaintiff contacted American Fidelity and was told that on February 16, 2010, correspondence was refaxed to Dr. Won per the employee's request (AR 640). On March 18, 2010, Plaintiff was sent an explanation of benefits from American Fidelity without any benefit payments, stating, "we are still waiting on Dr. Won's reply to our specific questions" (AR 382).

On April 7, 2010, American Fidelity was notified by Plaintiff's employer that Plaintiff was terminated from his employment on December 31, 2009, as they had not heard from him (AR 643). Also on that date, American Fidelity noted that the file was closed, and the explanation given was because the employer had not heard from Plaintiff and American Fidelity was unable to get Dr. Won to respond to their questions (AR 645). American Fidelity sent correspondence to Plaintiff stating, "You are no longer eligible for waiver of premium because your employment terminated 12/31/09. Therefore, we are placing your coverage in an inactive status" (AR 46). On April 8, 2010, American Fidelity conducted a telephone conversation with Plaintiff wherein he was advised that the claim was closed (AF 645).

On May 4, 2010, American Fidelity received notes from Dr. Won's office from a visit occurring April 15, 2010. Dr. Won stated:

> The patient initially had surgery on December 29, 2008. On approximately June 11, 2009 the patient began experiencing worsening low back pain and by October 2009 back pain became significantly incapacitating for him where he was unable to tolerate any form of prolonged position for more than ten to fifteen minutes or so. Hence, his condition has worsened since that time. He is recommended to

obtain an MRI of the lumbar spine with and without contrast; however, he desires
to continue with pain management at this time.

He has been referred to pain management in January 2010 for medication
management and further assistance with his disability needs and paper work
purposes.  His prognosis is good.

(AF 68).  On May 27, 2010, American Fidelity sent correspondence to Plaintiff indicating that

his disability was ended by his physician on April 6, 2010, and "to consider benefits beyond this

date you will need to submit verification from your current treating physician of treatment dates

and continued disability" (AR 385).

On July 19, 2011, American Fidelity sent an explanation of benefits without payment to

Plaintiff indicating Dr. Won had sent a copy of office notes from June 24, 2011 (AR 387).

Plaintiff was advised that "we do not have disability verified since 4/6/10.  In order for us to

review for consideration of additional benefits, we will need to receive a continuing claim form

that shows continued treatment dates since 4/6/10."  *Id.*  On July 25, 2011, American Fidelity

again spoke with Plaintiff and confirmed that they needed to receive a continuing claim form that

indicated his treatment dates (AR 650).  On August 22, 2011, Dr. Won's office sent a continuing

claim form that indicated that Plaintiff did not treat with him between April 15, 2010, and June

24, 2011 (AR 122-124).  On August 31, 2011, American Fidelity sent correspondence advising

Plaintiff of its determination that his disability had ended (AR 674).

On April 25, 2012, Plaintiff sent an appeal to American Fidelity of its benefits decision.

*Id.*  On June 21, 2012, American Fidelity sent notification to Plaintiff that the decision that

Plaintiff's disability had ended was being upheld (AR 675-677).  American Fidelity noted that

the reasons for the termination of benefits were: (1) Plaintiff was not under the regular care of a

physician; and (2) Plaintiff failed to follow the medical treatment advice of his physician as it

pertained to his disabling condition.  *Id.*

## LEGAL STANDARDS

### A.  Summary Judgment Review

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp*. *v*. *Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v*. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v*. *Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v*. *Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209

F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**B. Standard of Review Under ERISA**

ERISA requires the Court to review determinations made by employee benefit plans, including employee disability plans. *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). If a plan document expressly confers on the plan administrator the authority to determine benefits and construe the plan terms, that is sufficient to invoke an abuse of discretion standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014). In the Fifth Circuit, even if the plan does not expressly give the decision maker discretionary authority, "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard." *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991); *see also Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597-98 (5th Cir. 1994); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-01 (5th Cir. 1993).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *McCorkle*, 757 F.3d at 457 (quoting *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citations omitted)). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance*

*Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).  The plan administrator's decision is arbitrary

"'only if made without a rational connection between the known facts and the decision or

between the found facts and the evidence.'"  *Holland*, 756 F.3d at 246-247 (quoting *Meditrust*

*Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).  Under the abuse

of discretion standard, a court's "review of the administrator's decision need not be particularly

complex or technical; it need only assure that the administrator's decision fall somewhere on a

continuum of reasonableness-even if on the low end. "  *Holland*, 576 F.3d at 247 (quoting *Corry*

*v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 39 (5th Cir. 2007)).

## ANALYSIS

### A.  Defendant's Objections to the Affidavit of Douglas S. Won, M.D. (Dkt. #69)

Defendant objects to the affidavit of Dr. Won on the basis that it is not part of the

administrative record.  Defendant contends that the affidavit of Dr. Won set out Dr. Won's

disagreement with Defendant's characterization of Plaintiff's injury and attempts to clarify and

add to his written diagnosis.  Defendant contends this evidence was not available as part of the

administrative record, was not available at the time the benefits decision was made, and should

not be considered now.  Plaintiff asserts that Dr. Won's affidavit should be considered as an

exception to the general rule, in that the affidavit "assists the district court in understanding the

medical terminology or practice related to a claim" (Dkt. #70 at 4 (citing *Fussell v. Metro Life*

*Ins. Co.*, No. 02-2332, 2003 WL 21362257, at *2 (E.D. La. June 10, 2003)).  Specifically,

Plaintiff contends that Dr. Won's affidavit is necessary to understand the meaning of Dr. Won's

direction to Plaintiff to visit on an "as needed" basis.

The Fifth Circuit stated, "[a] long line of Fifth Circuit cases stands for the proposition

that, when assessing factual questions, the district court is constrained to the evidence before the

plan administrator." *Vega v. Nat'l Life Ins. Services, Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (collecting cases); *see also Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006). There are certain limited exceptions, "such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assist the district court in understanding the medical terminology or practice related to a claim." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000). It is undisputed that Dr. Won's affidavit was not part of the administrative record and was filed more than 2.5 years after the lawsuit was filed. The only question before the Court is whether it falls within the limited exception for evidence that assists the Court in understanding medical terminology or practice. The Court finds that it does not. Dr. Won does not define the term "as needed" in his affidavit, nor does he discuss what that terminology normally means in a medical practice. Dr. Won does offer additional explanation as to why he now considers Plaintiff to have been continuously disabled to the extent medical care was unnecessary; however, this information was never before the plan administrator, despite the fact that it was repeatedly requested. Thus, the Court finds that this evidence offers additional facts for consideration as to specific factual issues that Defendant used to make its claim determination, and is not properly before the Court. Defendant's objections are sustained, and the Court will not consider the affidavit of Dr. Won in its decision on the parties' cross-motions for summary judgment.

**B. Cross-Motions for Summary Judgment** *(Dkt. #50-58; #64)*

Plaintiff contends that Defendant's decision to terminate Plaintiff's disability benefits was not impartial, was not legally correct, and that Defendant's decision was arbitrary and capricious. Plaintiff asserts that Defendant's first reason for denying benefits, the failure of

Plaintiff to demonstrate that he was under the regular care and attendance of a physician, fails because Dr. Won informed Defendant that Plaintiff was only required to follow up with him on an "as needed" basis. Plaintiff also argues that Defendant's second reason for denying benefits, the failure of Plaintiff to follow the medical treatment advice of his physician, fails because Dr. Won's recommendations for an MRI and pain management specialist was for a separate injury not pertaining to his disabling condition.

Courts in the Fifth Circuit apply a two-step process to determine whether there is an abuse of discretion regarding policy interpretation. *Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257-58 (5th Cir. 2009). First, the Court determines whether the administrator's determination was legally correct. *Id*. at 257. "If so, the inquiry ends and there is no abuse of discretion." *Id*. However, if the Court finds that the administrator's interpretation was legally incorrect, the Court must then determine whether the administrator's decision was an abuse of discretion. *Id*. "Only upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest." *Id*.

The Court must consider three factors in deciding whether an interpretation is legally correct: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id*. at 258 (citation omitted). The most important factor is whether the administrator's interpretation was consistent with a fair reading of the plan. *Id*.

The relevant portions of the Policy are set forth as follows:

**SECTION 1**
**DEFINITIONS**

…

**TOTAL DISABILITY (or Totally Disabled)** means that for the Total Disability Period stated in the Schedule of Benefits, during which Disability Benefits are payable, You are unable to perform the material and substantial duties of Your employment as the result of a covered Accident or Sickness. After that, Total Disability means You are unable to perform the material and substantial duties of any occupation for wage or profit for which You are reasonably qualified by training, education, or experience.

…

## SECTION 3
## DISABILITY BENEFITS

Disability Benefits will be paid if You become Totally Disabled as defined in the Policy. Total Disability must:

      (a) be due to a covered Accident or Sickness; and

      (b) begin while Your coverage is in force.

…

No Disability Benefit will be paid for any period in which You are not under the Regular Care and Attendance of a Physician. Regular Care and Attendance means attended by a Physician at least once a month or until the Physician determines You:

      (a) have reached a state where continuous medical care is unnecessary; and

      (b) are still Totally Disabled, as defined in Section 1.

No benefits will be paid if You should fail to follow the medical treatment advice of Your Physician as it pertains to Your disabling condition.

…

## SECTION 6
## TERMINATION OF INSURANCE

Your coverage will end on the earliest of:

      (a) the date You do not qualify as an Insured

      (b) the date You retire;

      (c) the date You cease to be on Active Service as defined in Section 1;

      (d) the end of the last period for which premium has been paid; or

      (e) the date the Policy is discontinued.

(AR 429, 431, 437-38).

The evidence contained in the administrative record indicates that from October 2009 through March of 2010, American Fidelity requested information from Plaintiff's physician regarding his disability claim. Plaintiff's physician did not respond. On February 5, 2010, American Fidelity received information from Plaintiff's physician indicating that Dr. Won reviewed treatment options with Plaintiff and recommended an MRI with and without contrast for future evaluation of this pain and chronic pain management program. Plaintiff indicated that he would not follow Dr. Won's recommendation, since he could not afford an MRI. At that point, Plaintiff was instructed to follow up on an "as needed" basis with Dr. Won's office. On April 7, 2010, American Fidelity was notified that Plaintiff had been terminated from his employment on December 31, 2009. On April 15, 2010, Dr. Won's office notes from Plaintiff's visit indicated that his prognosis was good, and that he again refused an MRI in favor of pain management. From April 15, 2010, through June 24, 2011, Plaintiff failed to provide any evidence of "regular care and attendance by a physician at least once a month." Further, Plaintiff failed to provide any evidence that he did not fail "to follow the medical treatment advice" of his physician.

The unambiguous language of the Policy indicates that Plaintiff was required to be attended by a physician at least once a month or until the physician determined that Plaintiff reached a state where continuous medical care is unnecessary and Plaintiff is still totally disabled as defined by the Policy. Plaintiff was not seen by a physician once a month. While Plaintiff argues that he was only required to be seen "as needed" because continuous medical care was unnecessary, there is no evidence that Dr. Won found continuous medical care unnecessary. In fact, Dr. Won recommended continuing care in the form of an MRI and pain management, both of which Plaintiff refused to complete. Further, Dr. Won's notes also indicate that Plaintiff's

prognosis was good. Finally, the unambiguous language of the Policy also indicates that: "No benefits will be paid if You should fail to follow the medical treatment advice of Your Physician as it pertains to Your disabling condition." *Id.* However, it is undisputed that Plaintiff failed to follow the treatment advice of his physician. Plaintiff asserts that this treatment advice relates to another injury; however, there is simply no evidence to indicate that this is the case. Dr. Won's notes refer to Plaintiff's initial injury, as well as his subsequent surgery and the efforts to treat and manage those conditions, including the recommended MRI with and without contrast and pain management.

There is no evidence that American Fidelity failed to give the Policy a uniform construction, and American Fidelity's interpretation is consistent with a fair reading of the Policy. Finally, there are no unanticipated costs resulting from different interpretations of the Policy. Accordingly, after considering the administrative record and the Policy, the Court finds that American Fidelity's benefit determination was legally correct. Defendant's motion for summary judgment is granted on this basis alone, and the Court need not consider whether American Fidelity's decision was an abuse of discretion.

However, if the Court were to consider whether American Fidelity's decision was an abuse of discretion, the Court finds that it was not. First, the Court will consider whether there was a conflict of interest. An entity that acts as both insurer and administrator that determines whether to pay claims has a conflict of interest. *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001). Both Plaintiff and Defendant agree that Defendant had a conflict of interest here, because Defendant acted as both the claims fiduciary and the insurer with regard to Plaintiff's claim for benefits. If an administrator has a conflict of interest, the Court must weigh the conflict as a factor in determining whether there is an abuse of discretion. *Metro. Life*

*Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (citations omitted). A demonstrated conflict of interest does not change the abuse of discretion standard, but rather is a factor weighing against the administrator's decision. *Id.* "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* at 116. The Fifth Circuit has found that "*Glenn* stands for the proposition that such a conflict of interest is 'one factor among many that a reviewing judge must take into account.'" *Burch v. Hartford Life and Accident Ins. Co.*, No. 08-30513, 314 F. App'x 750, 2009 WL 714078, at *5 (5th Cir. Mar. 19, 2009). The Fifth Circuit has suggested that when there is no such evidence that shows a greater likelihood of conflict, or that the administrator's conflict affected its decision to deny the claim, the conflict at issue will be minimal and not of significant importance. *Id.*; *Dunn v. GE Grp. Life Assur. Co.*, 289 F. App'x 778, 781 (5th Cir. 2008), *abrogated on other grounds by Holland*, 576 F.3d at 247 n.3; *Young v. Wal-Mart Stores, Inc.*, 293 F. App'x 356, 360 (5th Cir. 2008).

In the present case, the only evidence of a conflict of interest is that Defendant was both the claims fiduciary and the insurer with regard to Plaintiff's claim for benefits. Plaintiff offers no evidence to suggest that Defendant acted in a biased manner with regard to its actions on Plaintiff's claim. While the conflict of interest is something that should be considered as a "factor," its importance is diminished by the lack of evidence demonstrating a conflict of interest that affected the benefits decision in any way. Plaintiff's unsupported assertions are not evidence of a conflict. *See Jurasin v. GHS Property & Cas. Ins. Co.*, 463 F. App'x 289, 292 (5th Cir. 2012) (citing *Schexnayder*, 600 F.3d at 468)). Thus, any conflict of interest is of minimal or insignificant importance.

The Court will now turn to the issue of whether American Fidelity abused its discretion. "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder,* 600 F.3d at 468. The plan administrator's decision is arbitrary "'only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Holland*, 756 F.3d at 246-247 (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)). There is no evidence in this case that American Fidelity's decision was made without a rational connection between the known facts and the decision. In fact, American Fidelity sought as much information as possible from Plaintiff's physician, and based its decision on the facts received from Plaintiff's physician. Thus, the Court finds that the decision was not an abuse of discretion, and substantial evidence supports American Fidelity's decision to terminate Plaintiff's benefits.

## CONCLUSION

Based on the foregoing, the Court finds that Defendant's Motion for Summary Judgment (Dkt. #50-58) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Dkt. #64) is **DENIED**. Accordingly, Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

**SIGNED this 13th day of November, 2014.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE